NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FLORIDA INSURANCE GUARANTY )
ASSOCIATION, INC., as statutory )
successor in interest to HOMEWISE )
PREFERRED INSURANCE COMPANY, )
)
          Appellant, )
)
v. )      Case No. 2D13-4455
)
DARLENE WATERS, )
)
          Appellee. )
_____)

Opinion filed February 6, 2015.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Pasco County; W.
Lowell Bray, Jr., Judge.

G. William Bissett, Jr. of Kubicki Draper, PA,
Miami, for Appellant.

George A. Vaka and Nancy A. Lauten of
Vaka Law Group, Tampa, and Kenneth C.
Thomas, Jr., of Marshall Thomas Burnett,
Land O'Lakes, for Appellee.

SILBERMAN, Judge.

        Florida Insurance Guaranty Association, Inc. (FIGA), appeals a nonfinal

order that compels an appraisal for Darlene Waters' sinkhole claim. Based on this

court's recent decision in Florida Insurance Guaranty Ass'n v. de la Fuente, 40 Fla. L.

Weekly D123 (Fla. 2d DCA Jan. 7, 2015), we conclude that the trial court erred in determining that Waters was entitled to an appraisal under her insurance policy. And, even if Waters had a right to an appraisal, she waived any right she had by taking action inconsistent with that right by actively litigating the case for over two years. Therefore, we reverse the order compelling appraisal and remand for further proceedings.

In October 2009, Waters' home sustained damage due to a sinkhole. She sought insurance benefits from her homeowners' insurance company, HomeWise Preferred Insurance Company (HomeWise). A geological investigation detected evidence of sinkhole activity, and remediation by pressure grout injections was recommended. HomeWise obtained two bids and agreed to pay either contractor to complete those repairs once Waters entered into a repair contract. Waters disagreed with HomeWise's assessment and requested neutral evaluation.

The neutral evaluation report issued in June 2010. The neutral evaluator also recommended compaction grouting and did not find underpinning was necessary. HomeWise accepted the neutral evaluator's findings. Waters then had further testing done at her own expense. The resulting report recommended compaction grouting and full underpinning for subsurface stabilization and foundation repair. Waters entered into a contract with Champion Foundation Repair Systems (Champion) to perform those repairs. The estimated cost was substantially greater than the estimated costs for repairs without underpinning. Waters submitted the Champion contract to HomeWise for approval in January 2011, but HomeWise failed or refused to approve it. At this point, Waters did not demand an appraisal under the terms of her policy.

On April 26, 2011, Waters sued HomeWise for breach of the insurance contract and alleged HomeWise refused to pay all benefits due. Waters served interrogatories, a request for admissions, and a request for production. She later set the case for jury trial. However, on November 4, 2011, a liquidation order was entered that declared HomeWise insolvent and activated FIGA to handle the covered claims of the insolvent insurer pursuant to sections 631.50 through 631.70, Florida Statutes (2011), the FIGA Act.

On April 11, 2012, FIGA informed Waters that it would provide coverage in accord with the neutral evaluator's recommendations once she entered into a contract for those repairs. Instead, Waters forwarded the Champion contract for FIGA's approval, but FIGA did not approve the contract. On June 14, 2012, Waters filed an amended complaint naming FIGA and alleging that FIGA breached the insurance policy by failing to authorize and approve the Champion contract. Waters also served interrogatories, requests for production, and requests for admissions on FIGA. After FIGA filed its answer and affirmative defenses, Waters served a notice on October 26, 2012, that the matter was at issue and ready for trial. On February 1, 2013, the trial court entered an order setting the jury trial for the week of August 12, 2013. Waters initiated further discovery directed to FIGA.

In correspondence to FIGA on May 13, 2013, Waters demanded an appraisal. FIGA did not respond, and both parties filed witness and exhibit lists. Six weeks before the trial date, on July 1, 2013, Waters filed a motion to compel appraisal and stay proceedings. FIGA argued that no appraisable issue existed and also raised the issue of waiver. After a hearing on the motion to compel, the trial court ordered

appraisal. In doing so, the trial court made no findings regarding waiver. FIGA appeals from that order compelling appraisal.

In de la Fuente, this court determined that rather than the statutory definition of "covered claim" in effect when the insurer issued the policy, the more restrictive version of the definition in effect at the time the insurer was adjudicated insolvent applied and governed the scope of FIGA's liability for sinkhole loss. Id. at D124; see also Fla. Ins. Guar. Ass'n v. Bernard, 140 So. 3d 1023, 1031 (Fla. 1st DCA 2014), review denied, No. SC14-1416, 2014 WL 6883868 (Fla. Dec. 5, 2014). The application of the 2011 definition of "covered claim" prohibits "FIGA from paying an insured directly for a sinkhole loss. Instead, FIGA may only pay a contractor for the 'actual repairs to the property' for such a loss up to the amount of the policy limits and the statutory limits on FIGA's obligations to pay, whichever is less." de la Fuente, 40 Fla. L. Weekly at D124.

This court also determined in de la Fuente that the 2011 definition effectively prohibits an appraisal under the terms of the policy because "requiring FIGA to participate in the appraisal process is at odds with FIGA's statutory mandate to pay only for the actual cost of repair for a covered sinkhole loss." Id. at D125. The court observed that the nature of sinkhole repairs made it unlikely that FIGA would be able to comply with the statutory requirements if the appraisal process were utilized. Id. The pertinent policy provisions in de la Fuente are the same as the provisions in the present case. Therefore, under this court's reasoning in de la Fuente, Waters would not be entitled to an appraisal. See id.; but see Fla. Ins. Guar. Ass'n v. Branco, 148 So. 3d 488, 492-93, 496 (Fla. 5th DCA 2014) (determining that the amount of loss is an

- 4 -

appraisal issue and affirming portion of order that directed parties to engage in the appraisal process); see also Fla. Ins. Guar. Ass'n v. Sill, 39 Fla. L. Weekly D2575, D2575 (Fla. 5th DCA Dec. 12, 2014); Fla. Ins. Guar. Ass'n v. Santos, 148 So. 3d 837, 838-39 (Fla. 5th DCA 2014).  Accordingly, we reverse the trial court's order determining that Waters was entitled to invoke the appraisal process.

Even if Waters had the right to an appraisal, she waived that right by taking action inconsistent with it by actively litigating the case for over two years.  The trial court did not explicitly rule on the waiver issue.  However, because the trial court ordered appraisal, it implicitly rejected FIGA's waiver argument.

On appellate review of a ruling on a motion to compel appraisal, factual findings are reviewed for competent, substantial evidence, and the application of the law to the facts is reviewed de novo.  See Fla. Ins. Guar. Ass'n v. Castilla, 18 So. 3d 703, 704 (Fla. 4th DCA 2009).  But when the trial court makes no findings of fact on the issue of waiver and the facts are undisputed, appellate review is de novo.  Branco, 148 So. 3d at 493; see also Mora v. Abraham Chevrolet-Tampa, Inc., 913 So. 2d 32, 33-34 (Fla. 2d DCA 2005) (regarding issue of arbitration waiver).  Based on the undisputed facts here, our review is de novo.

The Florida Supreme Court has "long held that a party's contract rights may be waived by actually participating in a lawsuit or taking action inconsistent with that right."  Raymond James Fin. Servs., Inc. v. Saldukas, 896 So. 2d 707, 711 (Fla. 2005) (citing Klosters Rederi A/S v. Arison Shipping Co., 280 So. 2d 678, 680 (Fla. 1973)).  Like an arbitration right or any other contract right, a party can waive a right to an appraisal when the party's conduct is inconsistent with that right.  See Fla. Ins. Guar.

Ass'n v. Reynolds, 148 So. 3d 840, 842 (Fla. 5th DCA 2014); see also Citizens Prop. Ins. Corp. v. Admiralty House, Inc., 66 So. 3d 342, 344-45 (Fla. 2d DCA 2011) (stating that although the insured had litigated the case for ten months, the insured had not maintained a position inconsistent with the remedy of appraisal because the insured made a presuit demand for appraisal and pleaded a claim for a declaratory action to determine its right to an appraisal).

Here, Waters did not invoke the appraisal clause until litigation had been ongoing for two years. HomeWise had acknowledged that a sinkhole loss existed but refused to approve the Champion contract that called for underpinning in addition to grouting. Rather than seek appraisal, Waters filed suit against HomeWise in April 2011, engaged in discovery, and in September 2011 filed a notice that the case was at issue and ready for jury trial.

After FIGA became obligated on any covered claim upon HomeWise's insolvency, FIGA agreed to provide coverage in accord with the neutral evaluator's report once Waters entered into a contract for repairs. Waters submitted the Champion contract rather than a contract consistent with the neutral evaluation, and FIGA did not approve the Champion contract. Then, on June 12, 2012, instead of seeking appraisal, Waters filed her amended complaint. She added FIGA as a defendant, demanded a jury trial, engaged in substantial discovery, and eventually had the case set for trial.

On May 13, 2013, Waters sent correspondence to FIGA demanding an appraisal. FIGA did not respond. In June 2013 both parties filed their witness and exhibit lists. On July 1, 2013, six weeks before the trial date, Waters filed a motion to compel appraisal and stay proceedings.

- 6 -

Waters voluntarily participated in this lawsuit against HomeWise and FIGA after both had agreed that there was a sinkhole loss but disputed the amount of loss. Under these circumstances, in which Waters pursued discovery and sought a jury trial on the same issues that would be addressed in an appraisal, we conclude that her conduct was inconsistent with the right to an appraisal and that she waived any right she had to an appraisal.  See Reynolds, 148 So. 3d at 842 (determining that the insureds waived the right to appraisal when they pursued significant litigation activities and waited over a year after FIGA admitted coverage before demanding an appraisal); Fla. Ins. Guar. Ass'n v. Maroulis, 39 Fla. L. Weekly D2198, D2199 (Fla. 5th DCA Oct. 17, 2014) (determining that waiver occurred when the insureds engaged in significant litigation activities and waited almost a year after FIGA accepted coverage to demand appraisal); Fla. Ins. Guar. Ass'n v. Rodriguez, 39 Fla. L. Weekly D2196, D2197 (Fla. 5th DCA Oct. 17, 2014) (determining that waiver occurred when the insureds engaged in litigation activity against original insurer and FIGA and waited three years to demand appraisal); cf. Fla. Ins. Guar. Ass'n v. Martucci, 152 So. 3d 759 (Fla. 5th DCA Dec. 5, 2014) (determining that no waiver occurred when the insureds demanded appraisal five months after FIGA admitted coverage and did not file any discovery requests or motions during that time).

Thus, we reverse the order compelling appraisal and remand for further proceedings.

Reversed and remanded.


KELLY and VILLANTI, JJ., Concur.